# Exhibit B

Documents filed in
State Court Action

Electronically Filed - Jackson - Kansas City - October 07, 2020 - 11:30 AM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY**

| | | |
|---|---|---|
| **BELINDA JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: _____** |
| | ) | **JURY TRIAL DEMANDED** |
| **HUMANA INSURANCE CO.** | ) | |
| **Serve:** | ) | |
| **Missouri Department of Insurance** | ) | |
| **Chlora Lindley-Myers, Director** | ) | |
| **Harry S. Truman State Office Bldg.** | ) | |
| **301 W. High Street, Room 530** | ) | |
| **Jefferson City, Missouri 65101** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

**Action Code TJ**

**<u>PETITION FOR RACE DISCRIMINATION, HARASSMENT (INCLUDING A
HOSTILE WORK ENVIRONMENT) & RETALIATION IN VIOLATION OF THE
MISSOURI HUMAN RIGHTS ACT</u>**

  **COMES NOW** Plaintiff, Belinda Johnson ("Ms. Johnson" or "Plaintiff"), and for her

cause of action against Humana Insurance Company, states as follows:

**<u>PARTIES</u>**

  1.  Belinda Johnson resides at 313 Dreamweaver Ave., Lee's Summit, Missouri.  She

is a current employee of Humana Insurance Company.

  2.  Humana Insurance Company ("Humana") is a foreign health insurance company.

  3.  Humana is an employer within the meaning of the Missouri Human Rights Act

("MHRA") because it employs six or more individuals in Missouri.

**JURISDICTION & VENUE**

4.      Ms. Johnson brought this action against Defendant pursuant to the MHRA for the discriminatory, harassing, and retaliatory behavior of Defendant's managers regarding their treatment of her based on her race, her complaints of discrimination in the workplace, and their failure to properly document, investigate, and correct the unlawful conduct complained of.

5.      On or about January 22, 2020, Ms. Johnson filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR") based on her claims of race discrimination, harassment (including a hostile work environment), and retaliation.  (A copy of the MCHR Charge is attached as **Ex. A**).

6.      The matter was assigned MCHR Charge No. FE-1/20-31557.

7.      On or about July 21, 2020, the MCHR issued Ms. Johnson a Right to Sue Notice ("RTS").  (A copy of the MCHR RTS is attached as **Ex. B**).

8.      Plaintiff's Petition is filed within ninety days of the issuance of the MCHR RTS and within two years of the discrimination complained of.

9.      Plaintiff has exhausted her administrative remedies against Defendant regarding her claims of race discrimination, harassment (including a hostile work environment), and retaliation.

**GENERAL ALLEGATIONS**

10.      In or about August 2018, Ms. Johnson was hired by Humana.

11.      In March 2019, Ms. Johnson moved to an Educator position in the Medicare Risk Adjustment department.

12.     Ms. Johnson was the only African-American in the Medicare Risk Adjustment department.

13.     In Ms. Johnson's role as an Educator, she presented educational sessions on chronic pain management to providers, in addition to assisting providers with documentation.

14.     On or about September 6, 2019, Ms. Johnson was scheduled to participate in a remote meeting.

15.     Milack Talia, the Caucasian Medicare Risk Adjustment Manager, was the presenter for the meeting and sent a "motivational" video to the participants prior to the meeting.

16.     Ms. Johnson viewed the "motivational" video prior to the meeting and was shocked and mortified by the content.

17.     The "motivational" video used the slur "nigger" multiple times and mentioned the Ku Klux Klan.

18.     The content of the video was completely inappropriate and not motivational.

19.      During the remote meeting, Mr. Talia stated that the video was "great."

20.     Ms. Johnson told Mr. Talia that she was offended by the content and did not find the video motivational.

21.     Mr. Talia responded to Ms. Johnson that people should have thicker skin.

22.     Mr. Talia also made an inaccurate statement that Martin Luther King and Malcolm X were "born of the struggle and overcame it."

23.     Ms. Johnson was perplexed by Mr. Talia's statement because Dr. King and Malcolm X were both murdered.

24.     On September 9, 2019, Ms. Johnson complained to Ms. Castleberry, her direct supervisor, about the racist video.

25. Ms. Castleberry defended the racist video by stating that it is 2019 and you hear the N-word on radio and in public.

26. Ms. Johnson told Ms. Castleberry that the N-word should not be used given the pain behind it.

27. Ms. Johnson became emotional and cried.

28. Ms. Castleberry became apologetic and agreed that the racist video was inappropriate and divisive.

29. Ms. Johnson asked Ms. Castleberry to investigate her complaint.

30. Ms. Johnson discussed the incident with Ms. Castleberry thereafter, but as far as she could tell no investigation was done.

31. In October 2019, Ms. Johnson received an "employee appreciation" gift from Mr. Talia's office.

32. The gift message said, "Thanks for being a part of our 3-ring circus."

33. The gift was a box of Barnum's Animal Crackers, which are in the shapes of various animals, including a gorilla.

34. Ms. Johnson was offended by the purported gift given the racist comparisons between African-Americans and monkeys.

35. On October 28, 2019, Ms. Johnson called Humana's Ethics Hotline and complained about the racially hostile work environment.

36. In Ms. Johnson's hotline complaint, she mentioned the racist video and Mr. Talia's inappropriate comments about it.

37. No one from HR contacted Ms. Johnson in response to her hotline complaint.

Electronically Filed - Jackson - Kansas City - October 07, 2020 - 11:30 AM

38.     On November 6-7, 2019, Ms. Johnson attended a corporate meeting in Overland Park, Kansas, that was facilitated by Mr. Talia.

39.     This was the first time Ms. Johnson had met Mr. Talia in person.

40.     During one part of the meeting, Mr. Talia purposefully took Ms. Johnson's chair.

41.     During another part of the meeting, Mr. Talia sat near Ms. Johnson and used vulgar language in her presence as though he was trying to intimidate her.

42.     During the corporate volunteering portion of the meeting, one of Mr. Talia's Caucasian reports from records retrieval motioned her hands like a whip and made whipping sounds towards Ms. Johnson.

43.     In response, Ms. Johnson shook her head and said, "Please don't do that."

44.     Mr. Talia's use of a racist video in the workplace clearly sent a message to employees that racist behavior is permissible.

45.     On or about December 18, 2019, Ms. Johnson completed the employee section of her performance review.

46.     Prior to December 30, 2019, Ms. Castleberry completed her portion of Ms. Johnson's performance review.

47.     Ms. Johnson's performance review required Mr. Talia's approval.

48.     On January 3, 2020, Ms. Johnson was contacted by Stacy Beasley, HR, regarding her October hotline complaint.

49.     Mr. Beasley, who is African-American, agreed with Ms. Johnson that the video Mr. Talia used in his presentation was inappropriate and asked for a copy.

50.     Mr. Beasley also stated that he was disappointed that other managers who participated in the meeting did not report the incident.

51.     Mr. Beasley told Ms. Johnson that he would investigate her complaint the following week.

52.     On January 6, 2020 (the same day Mr. Beasley was supposed to start his investigation), Ms. Johnson participated in a conference call led by Mr. Talia.

53.     During the conference call, Mr. Talia called Ms. Johnson's name two times for roll call.

54.     Ms. Johnson responded each time Mr. Talia called her name, as did Ms. Castleberry.

55.     Ms. Johnson could not understand why Mr. Talia called her name twice since all of the participants are identified on the roster and he did not do this to any of the other participants.

56.     During the conference call, Mr. Talia stated that he wanted to change the way Humana does performance reviews.

57.     Mr. Talia announced that performance reviews should not be based on performance alone and "trust" will be another factor considered.

58.     Mr. Talia also stated that employees would be graded on categories of trust ranging from high, medium and low.

59.     Mr. Talia also stated that merit increases and bonuses would be based on trust and performance.

60.     Mr. Talia told the conference call participants that he would take high trust over high performance.

61.     Mr. Talia also stated, "Low trust is toxic to our team" and he would personally show the door to anyone who is toxic with low trust.

6

62.     Ms. Johnson felt intimidated by Mr. Talia's statements during the conference call and believed her job was in jeopardy based on her complaints of race discrimination.

63.     During the first quarter of 2020, Ms. Johnson was placed on a performance improvement plan which requires her to achieve a 95% threshold on her work or face discipline.

64.     Ms. Johnson is subjected to random audits that are not fairly distributed.

65.     On or about April 13, 2020, Ms. Castleberry asked Ms. Johnson if she was still interested in her role and still wanted to do her job.

66.     Ms. Johnson told Ms. Castleberry that she was passionate about her work as an Educator.

67.     During this same time frame, Ms. Johnson's brother died, her father was in hospice due to cancer, and Ms. Johnson was injured in an automobile accident for which Ms. Johnson sought medical treatment.

68.     Ms. Castleberry scrutinized Ms. Johnson's use of flex time and personal time off when Ms. Johnson attended to her father or sought medical care for herself.

69.     Ms. Johnson has to schedule appointments for later in the day and has sometimes missed treatment all together because she is too afraid to miss work out of fear of being terminated.

70.     Others who reported to Ms. Castleberry freely used flex time without consequence. In fact, some of these individuals worked in the evenings.

71.     Ms. Castleberry told Ms. Johnson that she was not allowed to use flex time and that she had the right to remove it.

## COUNT I – RACE DISCRIMINATION & HARASSMENT (INCLUDING A HOSTILE WORK ENVIRONMENT)

72.     Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

7

73. The acts described above constitute a racially hostile work environment in violation of the MHRA.

74. Ms. Johnson is in a protected group based on her race.

75. Ms. Johnson was subjected to unwelcome racial discrimination and harassment in the following respects: she was sent a racist video from her manager that used the word "nigger" multiple times and mentioned the Ku Klux Claim; her manager commented that the racist video was "great;" when Ms. Johnson complained about the racist video to her supervisor she was told that it was 2019 and the N-word was on the radio and in public; Ms. Johnson was sent a box of animal cookies (including a gorillas) with a message that said, "Welcome to our 3-ring circus;" Ms. Johnson's manager took her chair during a conference, purposefully sat near her and used vulgar language so as to intimidate her; one of the manager's direct reports motioned her hands like a whip towards Ms. Johnson and made whipping sounds; and after Ms. Johnson made a hotline complaint and complained to HR about her manager, her manager stated that "high trust" was more important over high performance and he would personally show the door to anyone who was is toxic with low trust.

76. The conduct cited above was severe and pervasive and affected the terms, conditions, and privileges of Ms. Johnson's employment with Humana. Ms. Johnson and any reasonable person in her position would reasonably view it as such.

77. The conducted cited above was adverse and damaging and caused Ms. Johnson emotional upset. She was frequently stressed out, lost sleep, could not focus at work, and was constantly fearful of what else might happen to her at work, including termination based on Mr. Talia's statement about "trust."

78. Defendant's act of creating a racially hostile work environment and failing to correct the racially hostile work environment Ms. Johnson complained of constitutes malice or a reckless indifference to Ms. Johnson's protected rights.

**WHEREFORE**, Plaintiff prays for judgment against Defendant on Count I of her Petition, for a finding that she has been subjected to unlawful race discrimination and harassment (including a hostile work environment) prohibited by the MHRA; for an award of back pay, including lost commissions and other benefits; for an award of front pay; for interest; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' and expert fees and expenses, and for such other and further relief the Court deems just and proper.

## COUNT II – RETALIATION

79. Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 78 as if fully set forth herein.

80. The acts described above constitute retaliation in violation of the MHRA.

81. Ms. Johnson engaged in protected opposition to discrimination when she complained internally to managers and complained externally of the racially hostile work environment described above.

82. After Ms. Johnson complained internally and externally, she was placed on a performance improvement plan which required her to achieve a 95% threshold or face discipline; she was subjected to random audits concerning the performance improvement plan; she was scrutinized for using flex time that others in her department used; and she was told that she could not use flex time so that she could attend to her father and seek medical care.

83. Defendant failed to conduct a proper investigation into Ms. Johnson's complaints of a race discrimination, including a racially hostile work environment.

84. Ms. Johnson's internal and external complaints were the motivating factor behind the adverse employment actions described above.

85. A casual connection exists between Ms. Johnson's internal and external complaints of race discrimination and the adverse employment actions that followed.

86. The conducted cited above was adverse and damaging and caused Ms. Johnson emotional upset. She was frequently stressed out, lost sleep, could not focus at work, and was constantly fearful of what else might happen to her at work, including termination based on Mr. Talia's statement about "trust."

87. Defendant's act of retaliating against Ms. Johnson and failing to correct the racially hostile work environment Ms. Johnson complained of constitutes malice or a reckless indifference to Ms. Johnson's protected rights.

**WHEREFORE**, Plaintiff prays for judgment against Defendant on Count II of her Petition, for a finding that she has been subjected to unlawful retaliation prohibited by the MHRA; for an award of back pay, including lost commissions and other benefits; for an award of front pay; for interest; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' and expert fees and expenses, and for such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues triable by jury.

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Michael A. Williams
Michael A. Williams MO Bar 47538
1100 Main Street, Suite 2600
Kansas City, MO 64105

10

mwilliams@williamsdirks.com
(o) 816-945-7110
(f) 816-945-7118

**Attorney for Plaintiff**

### CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October, 2020, the foregoing was filed via the Court's electronic filing system which will send notice to all counsel of record.

/s/ Michael A. Williams
Michael A. Williams

11

Electronically Filed - Jackson - Kansas City - October 07, 2020 - 11:30 AM

Exhibit A

Electronically Filed - Jackson - Kansas City - October 07, 2020 - 11:30 AM

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| X | FEPA | |
| X | EEOC | 563-2020-00982 |

Missouri Commission on Human Rights and EEOC

*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Belinda Johnson | 816-510-8351 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|
| 313 NE Dreamweaver, Ave., Lee's Summit, Missouri, 64086 | 3/29/75 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Humana Insurance Company | 40,000 + | 502-580-1000 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 500 W. Main Street, Louisville, Kentucky, 40202 | Jefferson |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE *EARLIEST (ADEA/EPA)* |
|---|---|
| [X] RACE  [X] COLOR  [ ] SEX  [ ] RELIGION  [ ] AGE | September 6, 2019 - Present |
| [X] RETALIATION  [ ] NATION ORIGIN  [ ] DISABILITY  [X] OTHER *(Specify)* | [X] CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

In August 2018, I began working for Humana Insurance Company ("Humana").   In March 2019, I became an Educator in the Medicare Risk Adjustment Department.  I work out of my home office in Lee's Summit, Missouri.   My supervisor, Michelle Castleberry, a Caucasian, works out of Oklahoma.   My role is to present educational sessions on chronic care management and identify opportunities to improve provider documentation.

On or about September 6, 2019, I participated in a video conference meeting from my home office in Lee's Summit. The meeting presenter was Milack Talia, a Caucasian.  Mr. Talia is the Medicare Risk Adjustment Department Manager.   I am the only African-American in the departments Mr. Talia oversees and the only African-American who participated in the meeting.   Prior to the meeting, Mr. Talia sent a link to a video that was supposed to "motivate" the participants.   The participants were asked to view the video prior to the meeting.

I viewed the video prior to the meeting.   The beginning of the video contains a warning that offensive language is used.   The video uses the slur "nigger" multiple times and mentions the Ku Klux Klan.   I was extremely shocked by the content of the video, found the video to be inappropriate for any workplace, and did not find the video to be "motivational" at all.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | *Emmanuel Hermosillo* |
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| | *Belinda Johnson* |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date                    Charging Party *(Signature)* | 17th of January, 2020 |

EEOC FORM 5 (10/94)

{150759.RTF}

EMMANUEL HERMOSILLO
Commission Number 812954
MY COMMISSION EXPIRES
SEPTEMBER 28, 2020

During the meeting, Mr. Talia stated that he though the video was "great." I told Mr. Talia that I was offended by the content and did not find the video to be motivational. Mr. Talia stated that people should have thicker skin. He also made an inaccurate statement that Martin Luther King and Malcolm X were "born of the struggle and overcame it." I'm not sure how these civil rights leaders "overcame" racism because both were murdered.

On Monday, September 9, 2019, I reported the incident to Ms. Castleberry. Ms. Castleberry stated that it is 2019 and you hear the N-word on the radio and in public. I explained to Ms. Castleberry that the N-word should not be used given the pain behind it. I became very emotional and cried. Ms. Castleberry became apologetic and agreed that the video was inappropriate and divisive. I asked Ms. Castleberry to investigate the incident. Ms. Castleberry and I discussed the incident several times thereafter, but as far as I could tell, no investigation was done.

In October 2019, I received an "employee appreciation" gift that was delivered to my home from Mr. Talia's office. The gift message said, "Thanks for being part of our 3-ring circus." The gift was a box of Barnum's Animal Crackers. The crackers are in the shapes of various animals, including a gorilla. I was offended by the purported gift given the racist comparisons between African-Americans and monkeys.

On October 28, 2019, I called Humana's Ethics Hotline and made a complaint about the racially hostile work environment. I specifically mentioned the offensive video and Mr. Talia's inappropriate comments. I received no immediate response from HR.

On November 6-7 2019, I attended a corporate meeting in the Overland Park, Kansas that was facilitated by Mr. Talia. This was the first time I had met Mr. Talia in -person. During one part of the meeting, Mr. Talia purposefully took my chair. During another part of the meeting, Mr. Talia sat near me and used vulgar language in my presence as though he was trying to intimidate me. During the corporate volunteering portion of the meeting, one of Mr. Talia's Caucasian reports from records retrieval motioned her hands like a whip and made the whipping sounds towards me. I shook my head at her and said, "Please don't do that." I believe that Mr. Talia's use of the racially inappropriate video sent a message to employees that racism is permissible.

On or about December 18, 2019, I completed the employee section of my performance review. Ms. Castleberry completed her portion of my performance review by December 30, 2019. Mr. Talia must approve the performance review and any increase and bonus.

On Friday, January 3, 2020, I was contacted by Stacy Beasley, HR, regarding my October hotline complaint. Mr. Beasley, an African-American, agreed the video was inappropriate and asked for a copy. Mr. Beasley stated that he was disappointed that other managers from the meeting did not report the incident. He told me that he would begin an investigation the following week.

On January 6, 2020 (the same day the HR investigation was supposed to start), I participated in a conference call meeting led by Mr. Talia. During the meeting, Mr. Talia called my name two times for roll call. I responded each time and Ms. Castleberry also responded. I could not understand why my name was called because the participant's names appear on the roster when we dial in. Mr. Talia did not do this to any other of the participants.

During the meeting, Mr. Talia said that he wanted to change the way Humana does performance reviews. He said that performance reviews should not be based on performance alone and trust will be a factor. Mr. Talia stated that we would be graded on categories of trust ranging from high, medium and low. He stated that merit increases and bonuses would be based on trust and performance. Mr. Talia said that he would take high trust over high performance. He also stated, "Low trust is toxic to our team" and anyone who is toxic with low trust, he would personally show them the door any day of the week."

I felt intimidated and threatened by Mr. Talia's statements during the meeting. I am scared that my job is in jeopardy because I complained about race discrimination in the workplace. I believe Mr. Talia has planted a seed and

{150759.RTF }

corrupted the HR investigation into his conduct.

Based on the above, I believe I have been discriminated against and harassed based on my race in violation of the Missouri Human Rights Act and federal law. I also believe I have been retaliated against for making a good faith complaint of race discrimination and harassment in the workplace.

Electronically Filed - Jackson - Kansas City - October 07, 2020 - 11:30 AM

Electronically Filed - Jackson - Kansas City - October 07, 2020 - 11:30 AM

Exhibit B



**MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS**
# MISSOURI COMMISSION ON HUMAN RIGHTS

| **MICHAEL L. PARSON** | **ANNA S. HUI** | **MARTHA STAGGS** | **ALISA WARREN, PH.D.** |
|---|---|---|---|
| GOVERNOR | DEPARTMENT DIRECTOR | COMMISSION CHAIR | EXECUTIVE DIRECTOR |

Belinda Johnson
313 NE Dreamweaver Ave.
Lee's Summit, MO 64086

RE:   Johnson vs. Humana Insurance Co.
       FE-1/20-31557     563-2020-00982

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue.

This letter indicates your right to bring a civil action within 90 days of this notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred but it must be brought no later than two years after the alleged cause occurred or its reasonable discovery. Upon issuance of this notice, the MCHR is terminating all proceedings relating to the complaint. No person may file or reinstate a complaint with the MCHR after the issuance of a notice of right to sue relating to the same practice or act. You are hereby notified of your right to sue the Respondent(s) named in your complaint in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST**.

You are also notified that the Executive Director is hereby administratively closing this case and terminating all MCHR proceedings relating to it. This notice of right to sue has no effect on the suit-filing period for any federal claims. This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been over 180 days after the filing of this complaint and MCHR has not completed its administrative processing.

Respectfully,

Alisa Warren Ph.D.                          July 21, 2020
Executive Director                          Date

Humana Insurance Co.                        Michael A. Williams
500 W. Main St.                             Williams Dirks Dameron
Louisville, KY 40202                        1100 Main Street, Suite 2600
                                            Kansas City, MO 64195
                                            *Via email*

| ☐ | ☐ | ☑ | ☐ |
|---|---|---|---|
| JEFFERSON CITY OFFICE | ST. LOUIS OFFICE | KANSAS CITY OFFICE | SIKESTON OFFICE |
| 3315 WEST TRUMAN BLVD., SUITE 212 | 111 N. 7TH STREET, SUITE 903 | P.O. BOX 1129 | 106 ARTHUR STREET, SUITE D |
| P.O. BOX 1129 | ST. LOUIS, MO 63101-2100 | JEFFERSON CITY, 65102-1129 | SIKESTON, MO 63801-5454 |
| JEFFERSON CITY, MO 65102-1129 | PHONE: 314-340-7590 | PHONE: 816-889-3582 | FAX: 573-472-5321 |
| PHONE: 573-751-3325 | FAX: 314-340-7238 | | |
| FAX: 573-751-2905 | | | |

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY:    1-800-735-2966 (TDD)    Relay Missouri: 711
www.labor.mo.gov/DiscriminationComplaints    E-Mail: mchr@labor.mo.gov

# MISSOURI COMMISSION ON HUMAN RIGHTS

**MICHAEL L. PARSON**
GOVERNOR

**ANNA S. HUI**
DEPARTMENT DIRECTOR

**MARTHA STAGGS**
COMMISSION CHAIR

**ALISA WARREN, PH.D.**
EXECUTIVE DIRECTOR

Electronically Filed - Jackson - Kansas City - October 07, 2020 - 11:30 AM

**FE-1/20-31557**
Administrative Use/Records

January 24, 2020

Belinda Johnson
313 NE Dreamweaver Ave.
Lee's Summit, MO  64086

RE:  Johnson vs. Humana Insurance Co.
     FE-1/20-31557     563-2020-00982

This is to inform you that when you filed your complaint with the Equal Employment Opportunity Commission (EEOC) it was also filed with the Missouri Commission on Human Rights (MCHR).

**This complaint will be investigated by the EEOC.** You are encouraged to cooperate fully in the investigation.  An investigator from that agency will be in contact with you.

The Missouri Human Rights Act provides that you may request a right to sue letter. Such a letter would allow you to file suit in state court against the Respondent named in your complaint using your own resources. MCHR closes its case when it issues a right to sue letter.

If MCHR adopts EEOC's finding and closes your complaint, then you will not be able to get a right to sue letter from MCHR. If you want a right to sue letter, then you may request one in writing at any time. If you have requested a right to sue letter and MCHR has not completed its administrative processing of your complaint after it has been on file for over 180 days, then MCHR will issue your right to sue letter.

Respectfully,

*Terry Old*
*Information Support Coordinator*
*Missouri Commission on Human Rights - Kansas City*
*Terry.Old@Labor.Mo.Gov*

☐      ☐      ☒      ☐

3315 WEST TRUMAN BLVD., SUITE 212
P.O. BOX 1129
JEFFERSON CITY, MO 65102-1129
PHONE: 573-751-3325
FAX: 573-751-2905

111 N. 7TH STREET, SUITE 903
ST. LOUIS, MO 63101-2100
PHONE: 314-340-7590
FAX: 314-340-7238

1410 GENESSEE, SUITE 260
KANSAS CITY, MO 64102-1047
FAX: 816-889-3582

106 ARTHUR STREET, SUITE D
SIKESTON, MO 63801-5454
FAX: 573-472-5321

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY:    1-800-735-2966 (TDD)    Relay Missouri: 711
www.labor.mo.gov/mohumanrights    E-Mail: mchr@labor.mo.gov

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| X | FEPA | |
| X | EEOC | 563-2020-00982 |

| Missouri Commission on Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Belinda Johnson | 816-510-8351 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 313 NE Dreamweaver, Ave., Lee's Summit, Missouri, 64086 | | 3/29/75 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Humana Insurance Company | 40,000 + | 502-580-1000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 500 W. Main Street, Louisville, Kentucky, 40202 | | Jefferson |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE EARLIEST (ADEA/EPA) |
|---|---|
| [X] RACE  [X] COLOR  [ ] SEX  [ ] RELIGION  [ ] AGE | September 6, 2019 - Present |
| [X] RETALIATION  [ ] NATION  [ ] DISABILITY  [X] OTHER (Specify) ORIGIN | [X] CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

In August 2018, I began working for Humana Insurance Company ("Humana"). In March 2019, I became an Educator in the Medicare Risk Adjustment Department. I work out of my home office in Lee's Summit, Missouri. My supervisor, Michelle Castleberry, a Caucasian, works out of Oklahoma. My role is to present educational sessions on chronic care management and identify opportunities to improve provider documentation.

On or about September 6, 2019, I participated in a video conference meeting from my home office in Lee's Summit. The meeting presenter was Milack Talia, a Caucasian. Mr. Talia is the Medicare Risk Adjustment Department Manager. I am the only African-American in the departments Mr. Talia oversees and the only African-American who participated in the meeting. Prior to the meeting, Mr. Talia sent a link to a video that was supposed to "motivate" the participants. The participants were asked to view the video prior to the meeting.

I viewed the video prior to the meeting. The beginning of the video contains a warning that offensive language is used. The video uses the slur "nigger" multiple times and mentions the Ku Klux Klan. I was extremely shocked by the content of the video, found the video to be inappropriate for any workplace, and did not find the video to be "motivational" at all.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) Emmanuel Hermosillo |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT Belinda Johnson |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) 17th of January, 2020 |
| Date          Charging Party (Signature) | |

EEOC FORM 5 (10/94)

{150759.RTF}

EMMANUEL HERMOSILLO
Commission Number 812954
MY COMMISSION EXPIRES
SEPTEMBER 28, 2020

During the meeting, Mr. Talia stated that he though the video was "great." I told Mr. Talia that I was offended by the content and did not find the video to be motivational. Mr. Talia stated that people should have thicker skin. He also made an inaccurate statement that Martin Luther King and Malcolm X were "born of the struggle and overcame it." I'm not sure how these civil rights leaders "overcame" racism because both were murdered.

On Monday, September 9, 2019, I reported the incident to Ms. Castleberry. Ms. Castleberry stated that it is 2019 and you hear the N-word on the radio and in public. I explained to Ms. Castleberry that the N-word should not be used given the pain behind it. I became very emotional and cried. Ms. Castleberry became apologetic and agreed that the video was inappropriate and divisive. I asked Ms. Castleberry to investigate the incident. Ms. Castleberry and I discussed the incident several times thereafter, but as far as I could tell, no investigation was done.

In October 2019, I received an "employee appreciation" gift that was delivered to my home from Mr. Talia's office. The gift message said, "Thanks for being part of our 3-ring circus." The gift was a box of Barnum's Animal Crackers. The crackers are in the shapes of various animals, including a gorilla. I was offended by the purported gift given the racist comparisons between African-Americans and monkeys.

On October 28, 2019, I called Humana's Ethics Hotline and made a complaint about the racially hostile work environment. I specifically mentioned the offensive video and Mr. Talia's inappropriate comments. I received no immediate response from HR.

On November 6-7 2019, I attended a corporate meeting in the Overland Park, Kansas that was facilitated by Mr. Talia. This was the first time I had met Mr. Talia in -person. During one part of the meeting, Mr. Talia purposefully took my chair. During another part of the meeting, Mr. Talia sat near me and used vulgar language in my presence as though he was trying to intimidate me. During the corporate volunteering portion of the meeting, one of Mr. Talia's Caucasian reports from records retrieval motioned her hands like a whip and made the whipping sounds towards me. I shook my head at her and said, "Please don't do that." I believe that Mr. Talia's use of the racially inappropriate video sent a message to employees that racism is permissible.

On or about December 18, 2019, I completed the employee section of my performance review. Ms. Castleberry completed her portion of my performance review by December 30, 2019. Mr. Talia must approve the performance review and any increase and bonus.

On Friday, January 3, 2020, I was contacted by Stacy Beasley, HR, regarding my October hotline complaint. Mr. Beasley, an African-American, agreed the video was inappropriate and asked for a copy. Mr. Beasley stated that he was disappointed that other managers from the meeting did not report the incident. He told me that he would begin an investigation the following week.

On January 6, 2020 (the same day the HR investigation was supposed to start), I participated in a conference call meeting led by Mr. Talia. During the meeting, Mr. Talia called my name two times for roll call. I responded each time and Ms. Castleberry also responded. I could not understand why my name was called because the participant's names appear on the roster when we dial in. Mr. Talia did not do this to any other of the participants.

During the meeting, Mr. Talia said that he wanted to change the way Humana does performance reviews. He said that performance reviews should not be based on performance alone and trust will be a factor. Mr. Talia stated that we would be graded on categories of trust ranging from high, medium and low. He stated that merit increases and bonuses would be based on trust and performance. Mr. Talia said that he would take high trust over high performance. He also stated, "Low trust is toxic to our team" and anyone who is toxic with low trust, he would personally show them the door any day of the week."

I felt intimidated and threatened by Mr. Talia's statements during the meeting. I am scared that my job is in jeopardy because I complained about race discrimination in the workplace. I believe Mr. Talia has planted a seed and

{150759.RTF }

corrupted the HR investigation into his conduct.

Based on the above, I believe I have been discriminated against and harassed based on my race in violation of the Missouri Human Rights Act and federal law. I also believe I have been retaliated against for making a good faith complaint of race discrimination and harassment in the workplace.

Electronically Filed - Jackson - Kansas City - October 07, 2020 - 11:30 AM

| | |
|---|---|
| **From:** | Katie Graham |
| **To:** | Old, Terry |
| **Subject:** | Johnson v. Humana Insurance Company |
| **Date:** | Thursday, June 11, 2020 3:03:37 PM |
| **Attachments:** | 20-06-11 MCHR RTS Request Form - B. Johnson.pdf |
| | 20-06-11 Ltr. to MCHR requesting RTS (Final).pdf |

Hi Terry,

Attached is a letter from Michael Williams requesting the Right to Sue letters for his client Belinda Johnson. Please let me know if you have any questions or need any additional information. Thank you.

--

Katie Graham

Client Manager/Paralegal

Williams Dirks Dameron LLC

1100 Main Street, Suite 2600

Kansas City, Missouri 64105

(p) 816-945-7110 ext. 7

(f) 816-945-7118

Electronically Filed - Jackson - Kansas City - October 07, 2020 - 11:30 AM



June 11, 2020

SENT VIA EMAIL: terry.old@labor.mo.gov

Terry Old
Missouri Commission on Human Rights
Terry.old@labor.mo.gov

  RE: Johnson v. Humana
     EEOC# 563-2020-00982

Dear Mr. Old:

  I represent Belinda Johnson who has filed a Charge of Discrimination against Humana Insurance Company. Please consider this correspondence my request for her Right-To-Sue letter.

  In addition, I am requesting a copy of the investigation file as soon as possible. I am happy to pay any costs associated with the request. Thank you.

     Very truly yours,

     Michael A. Williams
     mwilliams@williamsdirks.com

MAW/kg
Enclosure



**MISSOURI COMMISSION ON HUMAN RIGHTS**

**REQUEST FOR NOTICE OF RIGHT TO SUE**

Electronically Filed - Jackson - Kansas City - October 07, 2020 - 11:30 AM

Belinda Johnson
Complainant Name                                              MCHR #

Humana Insurance Company                          563-2020-00982
Respondent(s) Name(s)                                  EEOC #

If you desire a Right to Sue letter from these agencies, it will be necessary for you to sign your name on both lines provided below:

The Missouri Human Rights Act provides a procedure for Complainants who want to take their case directly into state court:

If the commission has not completed its administrative processing and the person aggrieved so requests in writing, the commission shall issue to the person claiming to be aggrieved a letter indicating their right to bring a civil action within ninety days of such notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred, either before a circuit or associate circuit judge. **Upon issuance of this notice, the commission shall terminate all proceedings relating to the complaint.** No person may file or reinstate a complaint with the commission after the issuance of a notice under this section relating to the same practice or act. **Any action brought in court under this section shall be filed within ninety days from the date of the commission's notification letter to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party.** (Emphasis added.)

Title VII of the Civil Rights of 1964 also provides for granting Complainants a private right of action in federal court.

I wish to administratively close my complaint filed with the Missouri Commission on Human Rights in order to receive a Right to Sue letter.

Attorney for Complainant

_____          June 11, 2020
Signature                                                    Date

I wish to administratively close my complaint filed with the Equal Employment Opportunity Commission in order to receive a Right to Sue letter.

Attorney for Complainant

_____          June 11, 2020
Signature                                                    Date

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

BELINDA JOHNSON,

                    **PLAINTIFF(S),**              **CASE NO.** 2016-CV20901
**VS.**                                            DIVISION 1

  HUMANA INSURANCE CO.,

                    **DEFENDANT(S).**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
## AND ORDER FOR MEDIATION
_____

     NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable SANDRA C. MIDKIFF on 08-FEB-2021 in DIVISION 1 at 09:00 AM. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

     A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

     At the Case Management Conference, counsel should be prepared to address at least the following:

    a.     A trial setting;

    b.     Expert Witness Disclosure Cutoff Date;

    c.     A schedule for the orderly preparation of the case for trial;

    d.     Any issues which require input or action by the Court;

    e.     The status of settlement negotiations.

Case 4:20-cv-00916-HFS   Document 1-2   Filed 11/16/20   Page 26 of 29

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

/S/ SANDRA C. MIDKIFF
SANDRA C. MIDKIFF, **Circuit Judge**

Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
MICHAEL A WILLIAMS, SUITE 2600, 1100 MAIN STREET, KANSAS CITY, MO 64105

Defendant(s):
HUMANA INSURANCE CO.

Dated: 14-OCT-2020

MARY A. MARQUEZ
Court Administrator



# IN THE 16TH JUDICIAL CIRCUIT **COURT, JACKSON COUNTY, MISSOURI**

| | |
|---|---|
| Judge or Division:<br>SANDRA C. MIDKIFF | **Case Number: 2016-CV20901** |
| Plaintiff/Petitioner:<br>BELINDA JOHNSON | Plaintiff's/Petitioner's Attorney/Address<br>MICHAEL A WILLIAMS<br>SUITE 2600<br>1100 MAIN STREET<br>KANSAS CITY, MO 64105 |
| **vs.** | |
| Defendant/Respondent:<br>HUMANA INSURANCE CO. | Court Address:<br>415 E 12th |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | KANSAS CITY, MO 64106<br><br>(Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** HUMANA INSURANCE CO.
                    **Alias:**
**MISSOURI DEPT. OF INSURANCE**
**DIRECTOR CHLORA LINDLEY-MEYERS**
**301 W HIGH STREET ROOM 530**
**JEFFERSON CITY, MO 65101**

*COURT SEAL OF*



*JACKSON COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

14-OCT-2020
    Date                                                          Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
                              Date                                    Notary Public

| **Sheriff's Fees** | | |
|---|---|---|
| Summons | $ _____ | |
| Non Est | $ _____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ 10.00 | |
| Mileage | $ _____ | ( _____ miles @ $. _____ per mile) |
| **Total** | $ _____ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 20-SMCC-9273** 1 of 1 (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:20-cv-00916-HFS   Document 1-2   Filed 11/16/20   Page 28 of 29

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org  →  Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County

6/2020